Terry F. NEWELL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2627.

Court of Appeals of Alaska.

March 31, 1989.

Craig S. Howard, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Brent Cole, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Terry F. Newell pled no contest and was convicted of four counts of robbery in the second degree, AS 11.41.510(a)(1), a class B felony; AS 11.41.510(b). The maximum penalty for each count was ten years' imprisonment. AS 12.55.125(d). The presumptive terms were four years for a second felony offender, and six years for a third felony offender. *Id.* After hearing from the parties and considering Newell's record, Superior Court Judge Victor D. Carlson imposed a ten-year maximum sentence on each count—Counts I and II were concurrent; Counts III and IV were concurrent, but consecutive to Counts I and II. These sentences were to be served consecutively to any sentences Newell would serve after parole or probation revocation for his prior felony convictions. Judge Carlson recommended that Newell undergo drug and alcohol counseling while Newell was incarcerated. The court further provided in the judgment that Newell would not be eligible for parole during the entirety of his sentence. Newell appeals, arguing that the sentence is excessive and that the trial court abused its discretion by restricting his parole. We affirm Newell's sentence, but we reverse the parole restriction.

## THE OFFENSE

Newell pled no contest to all four counts in the indictment charging him with four

separate robberies. In addition, at the sentencing hearing, an investigator for the Anchorage Police Department testified that Newell had committed five other uncharged robberies. All of Newell's robberies occurred during October and November of 1987. In each case, his *modus operandi* was similar. He went into a small business, approached the clerk on duty, claimed to have a handgun, and demanded money. If the clerk resisted, Newell made threats and exhibited what the clerk thought was a weapon.

## THE OFFENDER

Terry F. Newell was forty-four years old at the time of sentencing in this case. He has graduated from high school, and was honorably discharged after service in the United States Army. He has a substantial history of drug and alcohol abuse. Newell has committed many drug-related and theft misdemeanors. More significantly, he has a number of felony convictions.

In 1970, Newell was convicted of grand theft in California after stealing tools worth $2,600. He spent sixty days in jail and was on probation for three years. His probation was revoked and he was committed to a facility for approximately one year for other theft-related offenses. From 1970 to 1975, it appears that Newell was in and out of California jails and rehabilitative programs. During this time, he apparently had an addiction to heroin.

Newell came to Alaska in 1974. He received his second and third felony convictions for forging checks in 1975. He received two four-year concurrent sentences for the two counts. In 1981, Newell was convicted of his fourth and fifth felonies for two more counts of forgery. Apparently, his prior felony convictions were not sufficiently similar to then Alaska law to qualify as prior felonies, so Newell received two concurrent, presumptive sentences. He was paroled on August 2, 1984.

In April 1985, he committed his sixth felony offense when he forged some checks on the account of his employer, Alaska Legal Services. He was convicted of one count of forgery in the second degree, and received a four-year aggravated, presumptive sentence. He was also convicted of an unrelated assault in the fourth degree, and received a sixty-day concurrent sentence. Newell received mandatory parole release on June 7, 1987. At the time these offenses occurred, parole revocation proceedings were pending because of unrelated parole violations.

As an aid in sentencing, Newell was examined by a psychologist, James F. Harper, whose summary and recommendations were as follows:

Terry Newell is a 43 year-old man who has been referred in the context of allegations involving four counts of Robbery in the Second Degree. These robberies apparently took place as a means to repay Mr. Newell's drug dealer. For a number of years, Mr. Newell has had significant difficulties with drug and alcohol dependence, and has previous charges that have been at least in part related to his chemical dependency.... The primary psychological difficulties indicated by the psychological evaluation, in addition to the chemical abuse noted above, is Mr. Newell's tendency to act impulsively without regard to the consequences of his actions. He appears to have had difficulty coping with stress and frustration, particularly in his relationships. At the present time, Mr. Newell suffers from an intense conflict between a desire to withdraw from personal relationships and a fear of autonomy and independence. He is also suffering from depression at the present time, with pessimism regarding the future, a loss of self-esteem, and difficulty involving himself in daily activities.

In addition to whatever period of incarceration is judged as necessary for Mr. Newell based on the Chaney criteria, he will be in need of long-term, residential treatment once he is released. The residential treatment program at the Clitheroe Center or through Akeela House would be the most appropriate for Mr. Newell. He recognizes his need for treatment in this area, and would willingly cooperate with whatever treatment is

made available to him. Mr. Newell appears to be an intelligent man who is also quite likeable. He has skills which would enable him to seek successful employment. If he is able to remain free of alcohol and drugs, I do not anticipate he would have any further legal difficulties.

## THE SENTENCING

Judge Carlson found two aggravating factors: (1) that Newell had three or more prior felony convictions, AS 12.55.-155(c)(15); and (2) that Newell was on parole for another felony charge or conviction at the time of these offenses. AS 12.55.-155(c)(20). In addition, Judge Carlson heard evidence that in each of his nine robberies, Newell represented by words or other conduct that he was armed with a deadly weapon or a dangerous instrument. *See* AS 11.41.500(a)(1), (2) (robbery in the first degree, a class A felony). Consequently, Judge Carlson concluded that Newell was guilty of more serious conduct and had benefited substantially from the plea agreement reached. *See, e.g.,* AS 12.-55.155(c)(10) (the conduct constituting the offense was among the most serious conduct included in the definition of the offense). Judge Carlson found that Newell was the very worst type of offender within his class of offense. Judge Carlson was concerned that Newell's offenses occurred almost immediately after his leaving jail. In Judge Carlson's view, Newell had no prospects for rehabilitation. He believed that Newell's impulsivity would diminish by the time he was fifty-five to fifty-eight years of age, and that Newell needed to be confined until then. He therefore imposed a twenty-year composite sentence and restricted parole during the entirety of the sentence.

## DISCUSSION

■ Newell argues that the trial court imposed an excessive sentence. He reasons that he has never been incarcerated for a period longer than three years and that he has never physically harmed anyone. He stresses that most of his prior convictions were for either property or drug offenses. In Newell's view, his history is one of a "clear-cut cycle." While incarcerated, Newell is a very productive person and upon release can avoid problems for approximately six months. At some point, however, day-to-day pressures lead him to abuse drugs, and then to commit crimes in order to support his drug use. This activity results in his subsequent incarceration. Newell argues that the two aggravators—three or more prior felonies, and being on probation or parole—are two of the least serious aggravators set forth in AS 12.55.155(c). He complains that Judge Carlson did not address the aggravators separately and did not indicate what weight he gave to each of them. *See, e.g., Juneby v. State,* 641 P.2d 823, 846 & n. 39 (Alaska App.1982), *modified,* 665 P.2d 30 (Alaska App.1983). Newell also argues that Judge Carlson did not specifically address each of the sentencing factors mentioned in *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970). In Newell's view, his sentence should not exceed fifteen years. He contends that such a sentence finds support in the principle of parsimony espoused in *Pears v. State,* 698 P.2d 1198, 1205 (Alaska 1985). Newell further argues that his sentence is inconsistent with *Williams v. State,* 759 P.2d 575 (Alaska App.1988) and *Pruett v. State,* 742 P.2d 257 (Alaska App.1987).

■ We reject Newell's arguments. In *Williams* and *Pruett,* we were dealing with first felony offenders, who had committed a series of nonfelony offenses. In contrast, Newell has been convicted of at least three prior felonies that are recognizable under the presumptive sentencing guidelines. In addition, Newell has three other felony convictions dating back to 1970. As Newell concedes, he has served three continuous years of imprisonment for previous felony convictions, and has served more than a year on a number of prior occasions. He thus qualifies as a particularly dangerous offender, *i.e.,* "one who has been convicted of at least two prior felonies, committed on different occasions, within five years of the present offense and who has previously served a sentence

in excess of one year." *Williams*, 759 P.2d at 577 (citing III *Standards For Criminal Justice* § 18–2.1 (Approved Draft 1979)). At forty-four, Newell no longer qualifies as a youthful offender. If anything, his offenses are becoming more serious with age. Newell's prior record alone qualifies him as a worst offender. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975). It is not controlling that Newell's prior felony convictions involved nonviolent crimes. *See, e.g., Lipscomb v. State*, 700 P.2d 1298, 1311 (Alaska App.1985). Because Newell's extensive felony record qualifies him as a worst offender, the trial court did not err in failing to separately address the various *Chaney* criteria or to separately weigh the aggravating factors found.

We recognize that Judge Carlson imposed consecutive sentences resulting in a composite sentence of twenty years. It is clear that Judge Carlson felt that Newell needed to be isolated for this period in order to protect the public. That finding is borne out by the record in this case.

■ Newell next argues that Judge Carlson erred in imposing the twenty-year parole restriction.[1] The supreme court and this court have discussed parole restrictions in several cases. In those cases, the appellate courts have emphasized the need for the trial court to make specific findings to justify an extended restriction on parole. In *Spencer v. State*, 642 P.2d 1371, 1377 (Alaska App.1982), we stated:

Where an extended parole eligibility term is imposed, the court must specifically address the issue and set out with particularity its reasons for concluding that the parole eligibility term prescribed by statute would be insufficient to protect the public and insure the defendant's reformation.

*See also Jackson v. State*, 616 P.2d 23, 25 (Alaska 1980).[2] In *Qualle v. State*, 652 P.2d 481, 486 (Alaska App.1982), we not only emphasized the need for findings, but we also stated that if the court imposed a lengthy sentence, then the court should rely on the parole board to determine whether to grant parole. Finding Qualle's twenty-year parole restriction to be clearly mistaken, we stated:

Finally, we have concluded that in the absence of any findings supported by substantial evidence that a limitation on parole eligibility is necessary to protect the public, the twenty-year limitation imposed here must be deemed clearly mistaken. Where, as here, a crime stems from psychological problems and the record shows no clear prospects for rehabilitation, it is certainly permissible to impose a relatively long sentence with no restriction on parole eligibility, trusting the Division of Corrections to provide appropriate rehabilitation treatment and to assess whether the treatment provided has been successful so that the defendant can be released before expiration of the full term. Alternatively, the court could impose a shorter sentence and limit parole eligibility. In the absence of spe-

---

1. Newell relies on former AS 33.15.230 which provided in pertinent part:

    (a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced for a term exceeding one year, may

    (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner is eligible for parole, which term shall be at least one-third of the maximum sentence imposed by the court; or

    (2) fix the maximum sentence of imprisonment to be served, in which case the court may specify that the prisoner is eligible for parole at the time the board determines.

AS 33.15.230 had been repealed as of the date of Newell's offenses. The subject matter of the former statute is now generally covered in AS 12.55.115, AS 33.16.090, and AS 33.16.100.

2. In *Jackson*, the court stated:

    We believe the correct approach is for the sentencing judge to impose an appropriate term of incarceration, considering the *Chaney* criteria, on the assumption that the entire term may be served. The court may then, in its discretion, designate a parole eligibility period greater than the statutory minimum, and should articulate on the record its reasons for doing so.

*Jackson*, 616 P.2d at 25 (footnotes omitted).

cific fact findings supported by substantial evidence that the defendant will, regardless of treatment and supervision, remain a risk during the entirety of the extended term, the court may not do both.

*Qualle,* 652 P.2d at 486 (citations omitted).

In *Lawrence v. State,* 764 P.2d 318, 321 (Alaska App.1988), we pointed out that "[p]arole authorities should be better situated to judge [the offender's] prospects for parole because they will have the opportunity to evaluate [the offender] at a future time, after he has had an opportunity to respond to the effects of rehabilitation programs."

Given Newell's previous record, his history of substance abuse, and his previous failures on parole, he is a poor candidate for rehabilitation. However, the imposition of a lengthy parole restriction is an unusual remedy and the trial court needs to specifically address the need to use this sort of restriction. Newell's opportunity for parole has already been substantially restricted by statute. *See* AS 33.16.100. By restricting Newell's parole during the entire period of his twenty-year sentence, the court has substantially increased this portion of Newell's sentence beyond what the legislature has mandated. This is problematical in a presumptive sentencing scheme which has a goal of treating offenders uniformly. *See Juneby,* 641 P.2d at 830. Totally restricting Newell's parole eligibility for a twenty-year period of time also appears to imply a distrust of the parole board's ability to do its job. We do not believe that such a distrust is warranted, particularly in the absence of express findings, supported by specific evidence, establishing a need to restrict parole eligibility. We accordingly find that the part of the court's judgment which restricts Newell's parole is clearly mistaken. In all other aspects we affirm the sentence.

Newell's sentence is AFFIRMED in part and VACATED in part; the case is REMANDED for resentencing consistent with this opinion.

SINGLETON, Judge, dissenting.

Judge Carlson sentenced Newell to four ten-year maximum sentences for four counts of robbery in the second degree, a class B felony. AS 11.41.510(a)(1); AS 12.-55.125(d). The sentences were concurrent in part and consecutive in part so that Newell faces a composite sentence of twenty years.[1] In addition, Judge Carlson restricted Newell's parole during the entire twenty-year period. The majority affirms the sentence, but strikes the parole restriction. I agree that the prison sentence is not clearly mistaken. However, I am also satisfied that this is one of the rare cases in which a judicial restriction on parole is warranted. I therefore dissent from the decision to strike the parole restriction.[2]

Newell gave only brief attention to the parole restriction in his sentencing memorandum. Essentially, he makes three arguments. First, Newell contends that former AS 33.15.230 permitted the trial court to restrict, but not eliminate parole. The majority notes that this section had been repealed and therefore does not apply to Newell, but does not address his argument.

Second, Newell incorporates his argument that a twenty-year sentence is unreasonable and reasons that, *a fortiori,* a twenty-year parole restriction is also unreasonable. Newell relies on AS 12.55.005(1) as interpreted in *Graybill v. State,* 672 P.2d 138, 142 (Alaska App.1983), *rev'd,* 695 P.2d 725 (Alaska 1985) for the proposition that the "just deserts" theory of sentencing requires (with apologies to Gilbert and Sullivan's Mikado) that the punishment fit the crime rather than the criminal and establishes a maximum permissible punishment regardless of potential recidivism. Newell seems to argue that if Graybill's

---

1. Newell's plea to a four-count complaint left him vulnerable to maximum consecutive sentences totaling forty years. Judge Carlson gave Newell about one-half of the maximum.

2. Newell argues that this sentence is consecutive to time he must serve on prior offenses because of parole or probation revocation. The parties do not appear to know exactly how much additional time is involved and the majority does not consider the issue.

sentence of seven and one-half years was excessive, his twenty-year unsuspended sentence is excessive. This argument is weakened by the fact that the supreme court reversed our decision in *Graybill* and affirmed Graybill's sentence. It is noteworthy that the supreme court not only rejected our result, but specifically disapproved of the reasoning, adopted by Newell, which lead to that result. *See State v. Graybill*, 695 P.2d 725, 728–31 (Alaska 1985). The majority rejects Newell's major premise without citing *Graybill* and concludes that a twenty-year sentence is not clearly mistaken. Thus, the majority rejects two of Newell's three arguments.

Newell's third argument, which the majority accepts, is that the trial court did not make separate findings of fact regarding parole limitations. The trial court did not specifically find that Newell had to be isolated for the entire twenty-year period without possibility of parole in order to protect the public.[3] While it is true Judge Carlson did not enter the proper fact findings, the normal remedy for inadequate or incorrect fact findings is a remand not a reversal. *Jackson v. State*, 616 P.2d 23, 24–25 (Alaska 1980). *See also Spencer v. State*, 642 P.2d 1371, 1377–78 (Alaska App. 1982); *DeGross v. State*, 768 P.2d 134, 138 (Alaska App.1989). *But see Qualle v. State*, 652 P.2d 481, 486 (Alaska App.1982) (court may not impose both a long sentence and limit parole eligibility). It is only where the record could not justify the required findings that this court may simply reverse and implicitly make its own contrary findings. *See Gullard v. State*, 497 P.2d 93, 94 (1972) (nineteen-year-old first felony offender received ten-year sentence for traffic manslaughter; court affirmed sentence but vacated parole restriction in light of defendant's youth and the length of his sentence).

Nevertheless, on this record I agree that a remand would be fruitless. Judge Carlson would simply enter the required findings and reimpose the original sentence restricting parole. The record so clearly supports a parole restriction that any other course is highly unlikely. *See Neal v. State*, 628 P.2d 19, 21 (Alaska 1981) (dispensing with specific fact findings under similar circumstances where established recidivism indicated defendant's propensity for future criminal conduct).

While the magic words may not have been uttered, it appears to me that the necessary fact findings are implicit. It would appear that findings that would constitute exceptional circumstances warranting an increase in the presumptive term will also justify a parole restriction. *See Whitlow v. State*, 719 P.2d 267, 269–70 & n. 5 (Alaska App.1986). It would also appear that a finding that the defendant cannot be rehabilitated within the prescribed period would justify parole restriction. *See Bloomstrand v. State*, 656 P.2d 584, 591 (Alaska App.1982) (parole may be restricted to insure that defendant receives necessary rehabilitation). Here Judge Carlson's findings satisfy both tests. He found exceptional circumstances and imposed a twenty-year composite sentence. He also implicitly found that Newell will not be rehabilitated within the twenty-year term. By affirming the twenty-year sentence, the majority in effect accepts the first finding and offers no persuasive reason for rejecting the second.

Where a defendant receives a maximum sentence because of the heinousness of his or her offense, but has never been incarcerated for a substantial period of time or been on probation or parole, the record may not support a restriction on parole no matter how bad the defendant's offense or his psychological prospects. *See Gullard*, 497 P.2d at 94; *Lawrence v. State*, 764 P.2d 318, 321–22 (Alaska App.1988); *Qualle*, 652 P.2d at 486. In this case, however, Newell has served a substantial period of incarceration on more than one occasion. Newell has been in and out of jail during most of the past eighteen years,

---

3. Sentences in excess of ten years or the maximum sentence for the defendant's most serious offense must be based on the need for isolation and cannot be justified by considerations of rehabilitation, deterrence of self or others, or reaffirmation of community norms. *See De-Gross v. State*, 768 P.2d 134, 140–141 n. 1 (Alaska App.1989).

and has been on probation and parole numerous times.[4] He has failed every time. Newell was also on parole at the time of his instant offenses. Under the circumstances, the trial court did not err in concluding that Newell's capacity for parole and probationary supervision has been sufficiently tested and that he should not be paroled or placed on probation in the future.[5]

[4] A review of the many presentence reports in this case indicates that beginning in 1970 and continuing through 1987 Newell had been paroled or on mandatory release seven times. He has never cooperated with parole officials and has consistently committed new crimes while on parole. The record supports a finding that Newell cannot function on parole.

[5] Neither *Jackson* nor *Spencer* is inconsistent with this view. Jackson, like Qualle and Lawrence, was a first felony offender. *See Jackson*, 616 P.2d at 24. Spencer's criminal record is not set out. Hence his situation may have been the same as Qualle and Lawrence. The majority's suggestion that a restriction on parole constitutes an inappropriate distrust of the parole board was expressly rejected in *Bloomstrand*, 656 P.2d at 591.